**SO ORDERED.**

**SIGNED this 1st day of April, 2015.**



Dale L. Somers
United States Bankruptcy Judge

___

Designated for publication
**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF KANSAS**

**In re:**

**MONICA L. WILLIAMS,**

                 **DEBTOR.**

**CASE NO. 12-21308
CHAPTER 13**

**MEMORANDUM OPINION AND JUDGMENT DENYING DEBTOR'S MOTION FOR AN ORDER UNDER 11 U.S.C. § 105 ENJOINING THE ACTIONS OF STATE OFFICIALS IN A PENDING CRIMINAL PROSECUTION AGAINST DEBTOR**

This controversy concerns the relationship of the Bankruptcy Court with the Johnson County, Kansas District Court and the Johnson County District Attorney when, on the date she filed her Chapter 13 petition, Debtor Monica Williams was a party to a criminal Diversion Agreement which required her to pay restitution. Debtor contends that the revocation of her criminal diversion because of her failure to pay restitution after confirmation of her Chapter 13 plan was a violation of the automatic stay and contrary to

the binding effect of confirmation. She moves for an order enjoining[1] the Johnson County District Court and the Johnson County District Attorney from revoking her diversion.[2] A hearing was held on January 15, 2015. Debtor appeared by David A. Reed. The Honorable Kevin Moriarty, Johnson County District Court Judge, appeared by Justice B. King of Fisher, Patterson, Sayler & Smith, L.L.P. Steven M. Howe, the Johnson County District Attorney, appeared by Brian M. Holland of Lathrop & Gage LLP. For the reasons stated below, the Court cannot grant Debtor's request for an injunction under 11 U.S.C. § 105.[3]

**BACKGROUND FACTS.**

On September 7, 2010, the State of Kansas, through the Johnson County District Attorney, charged Debtor with one count of felony theft. The criminal complaint, assigned case no. 10-CR-02241, alleged that Debtor stole more than $1,000 but less than

---

[1] Fed. R. Bankr. P. 7001(7) provides that "a proceeding to obtain an injunction or other equitable relief" is an adversary proceeding, and Fed. R. Bankr. P. 7003 provides that adversary proceedings are commenced by the filing of a complaint. Rather than following this procedure, Debtor commenced this matter by filing a motion. Because the issues have been fully briefed and argued by the Johnson County District Attorney and the Johnson County District Court, who would have been the defendants if this matter had been commenced as an adversary proceeding, the Court will address the merits rather than deny the motion on procedural grounds.

[2] This Court has jurisdiction pursuant to 28 U.S.C. § 157(a) and § 1334(a) and (b) and the Amended Standing Order of Reference of the United States District Court for the District of Kansas that exercised authority conferred by § 157(a) to refer to the District's bankruptcy judges all matters under the Bankruptcy Code and all proceedings arising under the Code or arising in or related to a case under the Code, effective June 24, 2013. D. Kan. Standing Order No. 13-1, *printed in* D. Kan. Rules of Practice and Procedure at 168 (March 2014). A motion for an injunction under 11 U.S.C. § 105 is a core proceeding which this Court may hear and determine as provided in 28 U.S.C.§ 157(b)(2)(A). There is no objection to venue or jurisdiction over the parties.

[3] All future references to title 11 in the text shall be to the section number only.

$25,000 in cash or checks from Olathe North High School Project Graduation. On July 12, 2011, Debtor and the District Attorney entered into a 24-month Diversion Agreement pursuant to which Debtor agreed to many conditions, including to pay a diversion fee of $150, court costs of $200.50, restitution of $12,861.81, and fees charged by her court-appointed attorney. The restitution payments were to be made with an initial payment of $666.81 by September 15, 2011, and subsequent monthly payments of $610 until the restitution was paid in full. If Debtor complied with her obligations under the Diversion Agreement, the District Attorney's Office agreed to dismiss the criminal case. The Diversion Agreement was filed, and the criminal proceedings were stayed.

Debtor filed for relief under Chapter 13 on May 12, 2012. Schedule E, Creditors Holding Unsecured Priority Claims, lists the District Attorney's Office as the holder of a claim for $9,240.[4] Debtor filed her proposed Chapter 13 plan with her petition. The amount owed to the District Attorney's Office was included in the plan as a nondischargeable priority claim with estimated monthly payments of $260. On July 9, 2012, Debtor's counsel corresponded with Debtor's diversion coordinator advising that a proof of claim should be filed. No objections to the Plan were filed, and it was orally confirmed on July 20, 2012. On August 8, 2012, Debtor's attorney filed a proof of claim for the District Attorney. On April 18, 2013, Debtor and the District Attorney entered

---

[4] The classification of Debtor's restitution obligation as an unsecured priority claim may not be correct. *See In re Bennett*, 237 B.R. 918 (Bankr. N.D. Tex. 1999) (holding that federal government's criminal restitution claim, although nondischargeable, was not entitled to priority treatment). But the classification has not been challenged and is not an issue in this case.

3

into an amended Diversion Agreement which extended the term of the agreement by 36 months. Payments were made on the District Attorney's claim.

In May of 2013, Debtor was in an auto accident, and injuries she suffered eventually forced her to leave her employment. The Chapter 13 Trustee moved to dismiss the case for failure to make plan payments. On December 13, 2013, Debtor moved to abate past due payments and to amend her plan by reducing her monthly payment and surrendering two vehicles. On January 15, 2014, Debtor moved to further amend the plan. There were no objections, and the plan as amended was confirmed on March 13, 2014.

On January 8, 2014, the District Attorney asked the Johnson County District Court to revoke Debtor's diversion for her breach of the Diversion Agreement by failing "to pay the balance of $95.50 for Court Appointed Attorney fees, and finger print fees" and failing "to pay the balance of $6,429.13 in restitution in this case."[5] District Court Judge Moriarty entered an order setting February 18, 2014, for a hearing on the issue of the revocation of Debtor's diversion. At the request of Debtor at the scheduled hearing, the matter was continued to June 24, 2014. At the rescheduled hearing, the District Court Judge found Debtor had violated the terms of her diversion, revoked the diversion, found Debtor guilty of the crime as charged, and ordered a pre-sentence investigation report.

---

[5] Doc. 84-5. Although additional terms of the Diversion Agreement were also breached, they were not listed as a basis for the revocation. Debtor has not contended that she was current on the payments required by her Chapter 13 plan.

4

On July 3, 2014, Debtor filed in this Court her Motion for an Order to Show Cause Why the Automatic Stay Should Not Be Enforced, and for Violating the Terms of a Confirmed Plan.[6] Service was made on the Chapter 13 Trustee, the Kansas Attorney General, and the Johnson County District Attorney. Debtor contended that the actions in the state court revoking the diversion because of nonpayment of restitution were in violation of the automatic stay. A scheduled hearing was held, but there was no appearance by the State of Kansas or the District Attorney.[7] At the direction of the Court, Debtor's counsel submitted an order granting the motion.[8] That order was entered but later withdrawn.[9] A briefing schedule was established,[10] and oral argument was held on January 15, 2015. Before the arguments were heard, the District Court set aside the judgment of guilt and continued the criminal matters. In addition, Debtor had paid her restitution in full sometime before that hearing.

**DISCUSSION.**

**A. The Parties' Contentions.**

The issue raised is whether the Court may enjoin the District Attorney and the Johnson County District Court from revoking Debtor's Diversion Agreement and

---

[6] Doc. 70.

[7] *See* doc. 72.

[8] Doc. 73.

[9] Doc. 76.

[10] Doc. 85.

5

proceeding with the felony prosecution because she failed to pay her restitution obligation. Debtor argues that the revocation of her diversion for failure to abide by her Diversion Agreement was a violation of the § 362(a) stay, since the revocation for failing to pay restitution is not within the exception to the stay provided by § 362(b)(1), which applies to "the commencement or continuation of a criminal action or proceeding against the debtor." In addition, Debtor argues that even if the revocation did not violate the stay, the revocation of her diversion because she failed to pay restitution was barred by her confirmed plan. The District Attorney and the Johnson County District Court assert that neither argument is correct, that the exception of § 362(b)(1) does apply to actions revoking diversion for nonpayment of restitution, and that confirmation of the plan providing for payment of the restitution is not a bar to the actions they took.

**B. A bankruptcy court may enjoin state criminal proceedings only if the requisites of *Younger v. Harris* are satisfied.**

As the United States Supreme Court stated in *Younger v. Harris*, "[T]he normal thing to do when federal courts are asked to enjoin pending proceedings in state courts is not to issue such injunctions."[11] There is a fundamental policy against federal interference with state criminal prosecutions.[12] *Younger* "permits a federal court to enjoin a state criminal prosecution only if 1) the party requesting the injunction is without adequate remedy at law; 2) the party stands to suffer 'irreparable injury' that is 'both

---

[11] *Younger v. Harris*, 401 U.S. 37, 45 (1971).

[12] *Id.* at 46.

6

great and immediate'; and 3) the threatened injury relates to his 'federally protected rights . . . [and] cannot be eliminated by his defense against a single criminal prosecution."[13]

**C. The Court will not enjoin the state criminal proceedings based upon a violation of the bankruptcy stay because the § 362(b)(1) exception to the stay applies to the revocation of Debtor's diversion, even though it is based upon her nonpayment of restitution.**

The filing of a petition under Chapter 13 of the Bankruptcy Code operates as a stay of "any act to collect, assess, or recover a claim against the debtor that arose before the commencement of the case" under Title 11.[14] But § 362(b)(1) provides that the filing of a petition does not operate as a stay of "the commencement or continuation of a criminal action or proceeding against the debtor." The Court's task is to interpret this exception to the automatic stay to determine if Debtor has a federally protected right which could be protected by the requested injunction under § 105.

"'[T]he starting point in every case involving construction of a statute is the language itself.'"[15] "'It is well established that "when the statute's language is plain, the sole function of the courts — at least where the disposition required by the text is not

---

[13] *Fussell v. Price (In re Fussell)*, 928 F.2d 712, 715 (5th Cir. 1991) (*quoting* parts of *Younger v. Harris*, 401 U.S. at 43-46). *See Barnette v. Evans,* 673 F.2d 1250, 1252 (11th Cir. 1982) ("The *Younger* Court held that a federal court should not enjoin a pending state criminal prosecution except under extraordinary circumstances where there is a great and immediate danger of irreparable harm to plaintiff's federally protected rights that cannot be eliminated by his defense against a single prosecution"); *Davis v. Sheldon (In re Davis)*, 691 F.2d 176, 178-79 (3rd Cir. 1982) (affirming denial of Chapter 7 debtors' request for permanent injunction against state court criminal prosecution for issuance of bad checks because *Younger* requirements not satisfied).

[14] 11 U.S.C. § 362(a)(6).

[15] *Kelly v. Robinson*, 479 U.S. 36, 43 (1986) (*quoting Blue Chip Stamps v. Manor Drug Stores*, 421 U.S. 723, 756 (1975) (Powell, J. concurring)).

7

absurd — is to enforce it according to its terms.'"'"[16] "'When terms used in a statute are undefined, we give them their ordinary meaning.'"[17] The ordinary meaning of a criminal proceeding is "[a] proceeding instituted to determine a person's guilt or innocence or to set a convicted person's punishment."[18] A proceeding "may include in its general sense all the steps taken or measures adopted in the prosecution or defense of an action, including the pleadings and judgment."[19]

Under the plain meaning § 362(b)(1), the exception to the stay applies to all aspects of the criminal case instituted against Debtor. There is no doubt that the revocation of Debtor's diversion is part of the criminal proceedings against her. Her prosecution was commenced by filing a complaint.[20] An arrest warrant was issued.[21] Debtor waived a preliminary examination and was arraigned.[22] Under Kansas law, "[a]fter a complaint has been filed charging a defendant with commission of a crime and prior to conviction thereof," the district attorney may propose a diversion agreement "if it

---

[16] *Lamie v. United States Trustee*, 540 U.S. 526, 534 (2004) (*quoting Hartford Underwriters Ins. Co. v. Union Planters Bank, N.A.*, 530 U.S. 1, 6 (2000)).

[17] *Hamilton v. Lanning*, 560 U.S. 505, 513 (2010) (*quoting Asgrow Seed Co. v. Winterboer*, 513 U.S. 179, 187 (1995)).

[18] Black's Law Dictionary (9th ed. 2009) (definition of "criminal proceeding" appears under "proceeding").

[19] *Id*.

[20] *See* K.S.A. 22-2301(a)(1) ("Unless otherwise provided by law, a prosecution shall be commenced by filing a complaint with a magistrate.").

[21] *See* K.S.A. 22-2302(1).

[22] *See* K.S.A. 2013 Supp. 22-2902(1) and -2902(4).
8

appears to the district attorney that diversion of the defendant would be in the interests of justice and of benefit to the defendant and the community."[23] Debtor and the District Attorney entered into a Diversion Agreement which was filed in the criminal case. That agreement, in accord with Kansas law, provided that "if Defendant performs the obligations under this agreement[,] the District Attorney's Office will dismiss the case with prejudice, with costs to Defendant."[24] However, it also provided that "should the District Attorney's Office make the determination that the Defendant is not complying with the provisions of this diversion agreement, that a motion to have prosecution reinstated against defendant may be filed."[25] If at a hearing on the District Attorney's motion, the district court determines that the defendant failed to fulfill the agreement, the court "shall *resume* the criminal proceedings on the complaint."[26] The proceedings seeking to revoke Debtor's diversion were part of the criminal proceedings against her and therefore within the § 362(b)(1) exception to the automatic stay.

Contrary to Debtor's position, the Court finds the fact that the revocation of the diversion was stated to be because of Debtor's failure to pay restitution does not remove the District Attorney's and the District Court's actions from the stay exception. The legislative history to § 362(b)(1) states that "bankruptcy laws are not a haven for criminal

---

[23] K.S.A. 22-2907(1).

[24] Doc. 82-2 at 9; *see* K.S.A. 2013 Supp. 22-2909.

[25] Doc. 82-2 at 5; *see* K.S.A. 22-2911(a).

[26] K.S.A. 22-2911(a) (emphasis added).

9

offenders, but are designed to give relief from financial over-extension. Thus, criminal actions and proceedings may proceed in spite of bankruptcy."[27] Consistent with this purpose, § 362(b)(1) has no exceptions. If Congress had intended for criminal proceedings involving the collection of restitution to be subject to the stay of § 362(a), it knew how to do so. For example, the exception to the stay codified at § 362(b)(4) for the enforcement of a governmental unit's police and regulatory power applies to the enforcement of a judgment "other than a money judgment."[28]

In accord with the foregoing meaning of the exception, courts have held that the stay of § 362(a) does not bar the continuation of federal criminal proceedings, including the enforcement of a probationary sentence because of nonpayment of restitution [29] and enforcement of a criminal fine and costs imposed in a prepetition criminal contempt proceeding.[30] Likewise, numerous courts have held that various aspects of state criminal proceedings are not stayed by the filing of a bankruptcy petition. These include the conviction of the debtor in state criminal proceedings for failure to pay child support,[31] the holding of a probation revocation hearing based upon the debtor's failure to pay a

---

[27] H.R. No. 95-595, 95th Cong. 1st Sess. 342 (1977); S.R. No. 95-989, 95th Cong. 2nd Sess. 51 (1978).

[28] 11 U.S.C § 362(b)(4).

[29] *United States v. Colasuonno*, 697 F.3d 164, 171-76 (2nd Cir. 2012); *United States v. Caddell*, 830 F.2d 36, 38-39 (5th Cir. 1987).

[30] *United States v. Troxler Hosiery Co., Inc.*, 41 B.R. 457, 459-63 (M.D.N.C. 1984).

[31] *Gruntz v. County of Los Angeles (In re Gruntz)*, 202 F.3d 1074, 1084-87 (9th Cir. 2000) (*en banc*).

criminal restitution obligation,[32] criminal proceedings relating to the debtor's hot check offenses, including the enforcement of orders to pay fines and restitution,[33] requiring the debtor to post bail in order to obtain her release from jail,[34] and revocation of a suspended sentence based upon the debtor's failure to make his monthly child support payments.[35] These, and other similar decisions, are consistent with the United States Supreme Court's emphasis on "the fundamental policy against federal interference with state criminal prosecutions."[36] "[T]he States' interest in administering their criminal justice systems free from federal interference is one of the most powerful of the considerations that should influence a court considering equitable types of relief."[37]

In an effort to remove the revocation of Debtor's diversion from the exception to the stay, Debtor argues that the stay of § 362(a), not the exception of § 362(b)(1), applies when an "immune criminal prosecution incorporates a civil remedy, namely, collection of restitution."[38] Primary reliance is placed on *Barnett*,[39] a 1981 decision by former District

---

[32] *Birk v. Simmons*, 108 B.R. 657, 659 (Bankr. S.D. Ill. 1988).

[33] *In re Bibbs*, 282 B.R. 876, 877-80 (Bankr. E.D. Ark. 2002).

[34] *In re Sori*, 513 B.R. 728, 736 (Bankr. N.D. Ill. 2014).

[35] *Rollins v. Campbell (In re Rollins)*, 243 B.R. 540, 546-48 (N.D. Ga. 1997).

[36] *Kelly v. Robinson*, 479 U.S. at 47 (quoting *Younger v. Harris*, 401 U.S. at 46).

[37] *Id.* at 49.

[38] Doc. 87 at 12. Debtor does not rely upon the "minority interpretation of §362(b)(1) [which] focuses on the motive behind the criminal prosecution and refuses to apply the exception when the primary motivation is the collection of a debt." *In re Sori*, 513 B.R. at 734. Therefore, the issue before the Court does not require a determination whether to follow this minority position or the majority position under which "the exception in § 362(b)(1) is absolute regardless of prosecutorial purpose or

11

of Kansas Bankruptcy Judge James A. Pusateri in a case under Chapter 13. In *Barnett*, the court was asked to determine if a conflict existed between the Bankruptcy Code and state legislation addressing the consequences of the issuance of a worthless (NSF) check. The court held that because of § 362(b)(1), there was no conflict to support enjoining the prosecutor from commencing or continuing a criminal NSF proceedings. But the court also held that once a bankruptcy was filed, the stay of § 362(a) barred sending a notice to the debtor, as authorized in the NSF criminal legislation, demanding that the debtor pay the debt caused by the NSF check or face the consequences of criminal prosecution. The court found that this statutorily-authorized notice, which could be sent by creditors without the assistance of the county attorney, was essentially a civil collection tool (and therefore outside the scope of § 362(b)(1)) and conflicted with the stay of § 362(a).[40] As pointed out by Debtor, *Barnett* was followed in *Kirk*,[41] also a Kansas bankruptcy court decision arising from a NSF criminal case. In that case, the debtor's prepetition payment of restitution to the clerk of the county court, who then transferred the funds to the business to which the NSF check had been given, was held to have been a preferential transfer. The court characterized the debtor's restitution payment to the clerk of the

---

alleged bad faith." *Id*. at 733.

[39] *Barnett v. K-Mart (In re Barnett)*, 15 B.R. 504 (Bankr. D. Kan. 1981).

[40] *Id*. at 511.

[41] *Rajala v. Bowlus School Supply, Inc. (In re Kirk)*, 38 B.R. 257 (Bankr. D. Kan. 1984).

12

county court as the substitution of "a civil enforcement mechanism for the criminal process."[42]

Contrary to Debtor's arguments, the analysis of *Barnett* is not applicable to this case. Unlike *Barnett*, this is not an NSF case. The restitution ordered as a condition of Debtor's diversion from further proceedings in her felony case is not a civil remedy. Under Kansas law, "[r]estitution is not merely victim compensation but also serves the functions of deterrence and rehabilitation of the guilty."[43] Further, under Kansas law the consequence of the revocation of diversion, even for the nonpayment of restitution, is not the enforcement of the restitution obligation; the revocation of diversion may lead to a criminal conviction based upon stipulated facts. In this case, there are no facts concerning any attempt to collect past-due restitution payments or to accelerate the collection of restitution as a result of the failure to pay in accord with the Diversion Agreement. This case is about the revocation of diversion because of the nonpayment of restitution, not the collection of restitution payments. The rationale of *Barnett* has no application.

Debtor also relies upon *Davenport*,[44] a 1990 opinion of the United States Supreme Court. It held that restitution obligations imposed as conditions of probation in state criminal actions constituted debts for bankruptcy purposes, and were accordingly

---

[42] *Id.* at 260.

[43] *State v. Applegate*, 266 Kan. 1072, 1075, 976 P.2d 936, 938 (1999).

[44] *Pa. Dept. of Public Welfare v. Davenport*, 495 U.S. 552 (1990).

13

dischargeable under the then-current provisions of Chapter 13. Congress quickly amended § 1325(a), reversing this holding by making restitution obligations nondischargeable. Nevertheless, Debtor relies upon the *Davenport* majority's rejection of the claim that an anomaly arises when the Code is construed to allow criminal prosecutions under § 362(b)(1) while at the same time allowing for the discharge of criminal restitution obligations. The Court in dicta observed, "It is not an irrational or inconsistent policy choice to permit prosecution of criminal offenses during the pendency of a bankruptcy action and at the same time to preclude probation officials from enforcing restitution orders while a debtor seeks relief under Chapter 13."[45] The cases cited by Debtor as following *Davenport*, *Walters*[46] and *Barboza*,[47] both involved postpetition efforts to collect restitution. But, as pointed out above, this case is not about the collection of criminal restitution. It is about the continuation of a criminal proceeding. Furthermore, as noted by the Second Circuit, the legislative overruling of *Davenport* and the fact that a Chapter 13 debtor no longer has an interest in the full release of restitution obligations are circumstances which "not only absolve us from our usual obligation to accord great deference to Supreme Court *dicta* . . . ; they also suggest particular hazard in relying on *Davenport*'s *dictum* to construe § 362(b)(1) to exempt from the automatic stay

---

[45] *Id*. at 561.

[46] *Walters v. Sherwood Municipal Court (In re Walters)*, 219 B.R. 520 (Bankr. W.D. Ark. 1998).

[47] *In re Barboza*, 211 B.R. 450 (Bankr. D.R.I. 1997).

all revocation [of a criminal sentence of probation] proceedings except those pertaining to nonpayment of restitution."[48]

Debtor also provides a list of eleven cases from outside the Tenth Circuit which are said to have enjoined restitution during the pendency of a Chapter 13 case.[49] These cases are either factually or legally distinguishable and therefore do not support Debtor's position.[50]

For the foregoing reasons the Court holds that the revocation of Debtor's diversion because she failed to fulfill her obligation under her Diversion Agreement to pay

---

[48] *United States v. Colasuonno*, 697 F.3d at 178-79.

[49] Doc. 70 at 4-5.

[50] *Holder v. Dotson (In re Holder)*, 26 B.R. 789 (Bankr. M.D. Tenn. 1982) (refusing to enjoin criminal NSF prosecution but enjoining payment of restitution during Chapter 13 proceeding since Tennessee's bad check statute had to large extent evolved into public debt collection system); *Johnson v. Lindsey (In re Johnson)*,16 B.R. 211 (Bankr. M.D. Fla. 1981) (declining to enjoin NSF prosecution but holding that state could not use criminal process to compel debtor to make restitution on dischargeable debt); *Redenbaugh v. Gahle (In re Redenbaugh)*, 37 B.R. 383 (Bankr. C.D. Ill. 1984) (creditor enjoined from requesting or receiving any portion of claim which had been discharged and which creditor was attempting to collect through restitution in criminal case); *Farrell v. Shriver (In re Farrell*, 43 B.R. 115 (M.D. Tenn. 1984) (bankruptcy court enjoined county district attorney from proceeding in criminal prosecution; district court reversed bankruptcy because purpose of Bankruptcy Code would be served by enjoining collection of discharged debt through criminal proceeding); *Brown v. Shriver (In re Brown)*, 39 B.R. 820 (Bankr. M.D. Tenn 1984) (state prosecutor enjoined from seeking revocation of debtor's probation on ground that debtor discharged restitution award); *In re Liss*, 59 B.R. 556 (Bankr. N.D. Ill. 1986) (state government entities are not prevented from exercising their police or regulatory powers; stay is operative to prevent enforcement of money judgment under state consumer fraud act); *Brown v. Hampton (In re Brown)*, 51 B.R. 51 (Bankr. E.D. Ark. 1985) (in Chapter 7 case, criminal proceeding under hot check law would not be enjoined but instigating creditor would be temporarily enjoined from receiving restitution as part of criminal proceeding); *In re Barboza*, 211 B.R. at 450 (if sole objective of debtor's postpetition probation hearing is to collect restitution, proceeding may violate automatic stay); *Pearce v. E.L.W. Corp. (In re Pearce)*, 400 B.R. 126 (Bankr. N.D. Iowa 2009) (creditor of Chapter 7 debtor violated stay by contacting prosecutor and police regarding unpaid debt); *In re Storozhenko*, 459 B.R. 697 (Bankr. E. D. Mich. 2011) (attempted collection of restitution ordered as part of civil contempt was not within criminal actions exception to the stay); and *In re Feingold*, 730 F.3d 1268 (11th Cir. 2013) (costs and expenses assessed against debtor in state attorney disciplinary proceeding were nondischargable but this was not sufficient basis for granting relief from stay under § 362(d)(1)).

15

restitution as required for the suspension of the criminal proceedings against her is within the § 362(b)(1) exception to the stay of § 362(a). Debtor has no federally protected right which is threatened by the revocation of her diversion based upon the nonpayment of her restitution. Debtor's application for an injunction under § 105 based upon the alleged violation of § 362(a) is denied.

**D. The Court will not enjoin the revocation of Debtor's diversion based upon her nonpayment of restitution on the basis that it is contrary to the binding effect of the confirmation of Debtor's Chapter 13 plan because Debtor has not shown that the *Younger* standard is satisfied.**

As an alternative argument in support of her motion to enjoin the revocation of her diversion, Debtor argues that the confirmation of her Chapter 13 plan, which provided for payment of her criminal restitution, is binding on the District Attorney under § 1327 and bars the action taken. Section 1327, "Effect of confirmation," provides in subsection (a) that the "provisions of a confirmed plan bind the debtor and each creditor, whether or not the claim of such creditor is provided for by the plan, and whether or not such creditor has objected to, has accepted, or has rejected the plan." If notice to the holder of the restitution claim satisfied due process, confirmation of the plan "'represents a binding determination of the rights and liabilities of the parties as ordained by the plan.'"[51] This means that "because 'creditors are limited to those rights that they are afforded by the plan, they may not take actions to collect debts that are inconsistent with the method of

---

[51] *In re Talbot*, 124 F.3d 1201, 1209 (10th Cir. 1997) (*quoting* 8 *Collier on Bankruptcy*, ¶ 1327.02[1] (Lawrence P. King ed., 15th ed. 1996)).

payment provided for in the plan.'"[52] In this controversy, the question is whether an injunction should issue to protect Debtor's rights under § 1327.

As stated above, because of the strong policy against federal court interference with state criminal proceedings, under *Younger*, an injunction may issue to protect a federal right "only if 1) the party requesting the injunction is without adequate remedy at law; 2) the party stands to suffer 'irreparable injury' that is 'both great and immediate'; and 3) the threatened injury relates to his 'federally protected rights . . . [and] cannot be eliminated by his defense against a single criminal prosecution."[53] In this case, Debtor does not address the *Younger* standards. Rather, Debtor relies upon *Coulter*.[54] In *Coulter*, a Chapter 13 debtor, who before filing bankruptcy had pled guilty to a crime and been ordered to pay restitution, filed an adversary complaint seeking a determination that the state department of probation would violate the automatic stay by holding a scheduled postpetition probation violation hearing for the debtor's failure to pay restitution and fees according to the prepetition schedule established by the state, rather than according to the debtor's confirmed plan. First, the court held that § 362(a) did not bar the actions which the state had already taken. Next, the court held that under res judicata principles and § 1327, the debtor's plan was binding on the state. It therefore, under § 105, enjoined the

---

[52] *Id.* (*quoting* 8 *Collier on Bankruptcy* ¶ 1327.02[1][b]).

[53] *In re Fussell*, 928 F.2d at 715 (*quoting* parts of *Younger v. Harris*, 401 U.S. at 43-46).

[54] *Coulter v. Aplin (In re Coulter)*, 305 B.R. 748 (Bankr. D.S.C. 2003).

17

state from initiating or participating in probation violation hearings based upon the ground that the debtor had not paid the restitution according to the state-ordered plan.

This Court declines to follow *Coulter* for several reasons. First, the *Coulter* court issued an injunction because "this Court must have an ability to give force and effect to its orders and maintain the integrity of the bankruptcy confirmation process."[55] Although the state defendants contended that the *Younger* doctrine precluded the bankruptcy court from enjoining the state criminal proceedings, the *Coulter* court did not discuss *Younger* and did not find the *Younger* requirements for the issuance of an injunction to be satisfied. Second, neither *Perrin*[56] nor *Gilliam*[57] nor *Birk*,[58] the three cases relied upon by *Coulter* concerning the binding effect of a confirmed plan on state criminal proceedings, found that an injunction should issue to support the supremacy of federal law. *Perrin* held that neither the § 362 stay nor the res judicata effect of confirmation of the debtor's Chapter 13 plan precluded a municipal court from vacating a fine, the payment of which was addressed by the plan, and imposing jail time or community service.[59] No injunction was issued. In *Gilliam,* a Chapter 13 debtor sought to enjoin the State of Tennessee from revoking his probation and suspended sentence based upon his failure to satisfy a

---

[55] *Id.* at 758.

[56] *In re Perrin*, 233 B.R. 71 (Bankr. D.N.J. 1999).

[57] *Gilliam v. Metropolitan Gov't (In re Gilliam)*, 67 B.R. 83 (Bankr. M.D. Tenn. 1986).

[58] *Birk v. Simmons (In re Birk)*, 108 B.R. 657 (Bankr. S.D. Ill. 1988).

[59] *Perrin*, 233 B.R. at 80.

condition of probation that he pay a criminal fine and court costs. The court held that an injunction would not issue because the debtor had not alleged facts to bring the proceeding within any of the exceptions allowing state criminal proceedings to be enjoined as discussed in *Younger*, and noted the debtor could in the state court plead as a defense his confirmed Chapter 13 plan and his continuing efforts to pay the fine and costs.[60] *Birk* is similar. After the debtor obtained confirmation of a Chapter 13 plan providing for the full payment of a restitution obligation, a probation revocation hearing based upon his nonpayment of the restitution was held and resulted in the extension of the debtor's probation for one year. The debtor brought an action alleging a violation of the automatic stay. The court held that the stay did not bar the revocation hearing, and that the debtor had not shown sufficient grounds for an injunction under *Younger*.[61] The court said, "If probation revocation is threatened in the future, the Debtor may plead his 100% Chapter 13 plan in defense and explain his efforts to pay his debts."[62]

In this case, Debtor has not argued that she is entitled to an injunction under the *Younger* standard. Like the debtors in *Gilliam* and *Birk*, she can raise her efforts to pay her restitution under her confirmed plan as a defense at the hearing to revoke her diversion and enter the felony conviction. The Court therefore denies Debtor's request

---

[60] *In re Gilliam*, 67 B.R. at 87.

[61] *In re Birk*, 108 B.R. at 659-60.

[62] *Id.* at 660 (*citing In re Gilliam*, 67 B.R. at 83).

19

for an injunction against the revocation of her diversion on the basis that such action is contrary to § 1327.

**CONCLUSION AND JUDGMENT.**

The Court denies Debtor's request for an injunction under § 105. This motion presents no extraordinary circumstances which could justify this Court's interference with the criminal proceedings against Debtor that are pending in the District Court of Johnson County, Kansas.

The foregoing constitutes Findings of Fact and Conclusions of Law under Rules 7052 and 9014(c) of the Federal Rules of Bankruptcy Procedure which make Rule 52(a) of the Federal Rules of Civil Procedure applicable to this matter. The judgment based on this ruling will become effective when it is entered on the docket for this case, as provided by Federal Rule of Bankruptcy Procedure 9021.

**IT IS SO ORDERED.**

# # #